# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**CHEVELLE MCALISTER, #123411**                                                  **PLAINTIFF**

**v.**                                                **CIVIL NO. 5:22-cv-90-DCB-LGI**

**MANAGEMENT AND TRAINING
CORPORATION, DARREL VANNOY,
BIANCA REECE, SA'MYNI BELL,
JANAIYA BOLDEN, and M. SCHOETTMER**                       **DEFENDANTS**

## REPORT AND RECOMMENDATION

This case is before the Court on Defendants Management and Training Corporation, Darrel Vannoy, Bianca Reece, Sa'Myni Bell, and Janaiya Bolden's Motion [29] for Partial Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies. Having considered the parties' submissions and the applicable law, the undersigned recommends that the Motion [29] be granted.

### I. BACKGROUND

Pro se Plaintiff Chevelle McAlister ("Plaintiff") is a post-conviction inmate incarcerated by the Mississippi Department of Corrections ("MDOC"). Plaintiff is proceeding *in forma pauperis*, subject to the Prison Litigation Reform Act ("PLRA"), and he brings this suit under 42 U.S.C. § 1983. *See* Compl. [1] at 1; Order [5]. The named Defendants are Management and Training Corporation, Darrel Vannoy, Bianca Reece, Sa'Myni Bell, Janaiya Bolden, and M. Schoettmer.

Plaintiff complains about the conditions of his prior confinement at the Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi. WCCF

is a privately-operated prison facility that is presently operated by Management and Training Corporation ("MTC"). On October 18, 2023, the undersigned conducted a screening hearing wherein Plaintiff clarified and amended his claims by his sworn testimony. *See* Omnibus Hearing Transcript [28]; Attach. [29-1]. Plaintiff's allegations are summarized below.

In short, Plaintiff claims that on July 25, 2022, in the dayroom at WCCF, fellow inmate Daniel Hatten came out of his cell and immediately grabbed a mop stick and began hitting Plaintiff in the face. Plaintiff testified that he used a shank (prison-made knife) to stab Hatten in self-defense. Plaintiff testified that Hatten's custodial designation was close-custody and Plaintiff's custodial designation was protective-custody medium security. As explained by Plaintiff, Hatten's custodial designation allows for shorter time-periods outside of his cell and means Hatten should not have been able to leave his cell and enter the dayroom when Plaintiff was in the dayroom. Plaintiff testified that as a result of the altercation, he suffered an injured leg, a chipped tooth, and a cracked tooth. Plaintiff testified that he was taken to the medical department where he saw a doctor that advised him his leg was fractured. Plaintiff indicated that in addition to his failure to protect claims, he may be asserting a claim for the denial of medical care. Plaintiff testified that approximately three-months after the incident, he was moved to the South Mississippi Correctional Institution in Leakesville, Mississippi, where he is currently housed.

On November 20, 2023, Defendants MTC, Vannoy, Reece, Bell, and Bolden filed a Motion [29] for Partial Summary Judgment, arguing Plaintiff failed to properly exhaust his available administrative remedies prior to filing this lawsuit as to any denial of medical care claims. In support of their Motion [29], the moving Defendants submit a copy of the Omnibus Hearing Transcript [29-1], a declaration of the ARP records custodian for WCCF along with Plaintiff's relevant ARP records [29-2], and a copy of the applicable MDOC Inmate Handbook [31-1]. Plaintiff has not filed a response and the time for doing so has passed.

## II. ANALYSIS

A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences are construed in the light most favorable to the non-moving party, *see Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010), "but conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

Summary judgment is routinely utilized to decide if a prisoner completed pre-filing exhaustion in conditions-of-confinement cases. *See, e.g.*, *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (finding "there is no genuine issue of material fact as to whether Wilson exhausted his administrative remedies, and summary judgment was appropriate"); *Dillon*, 596 F.3d at 272 ("[E]xhaustion is a threshold issue that courts

must address to determine whether litigation is being conducted in the right forum at the right time."). If a defendant meets his "initial summary judgment burden of showing that there [is] no genuine issue of material fact regarding exhaustion" and the prisoner-plaintiff "fail[s] to come forward with specific facts showing there [is] a genuine dispute as to exhaustion, the district court [is] required to dismiss his claims." *Jackson v. Hall*, 763 F. App'x 376, 376-77 (5th Cir. 2019) (affirming summary judgment dismissal for failure to exhaust administrative remedies, noting that district court did not err by ruling on prisoner's claims in the context of summary judgment without allowing discovery or conducting an evidentiary hearing).

B.  The PLRA's Exhaustion Requirement

The PLRA provides that an inmate may not sue under federal law until exhausting available administrative remedies. 42 U.S.C. § 1997e(a). The exhaustion requirement (1) "give[s] an agency an opportunity to correct its own mistakes . . . before it is haled into federal court" and (2) it permits "claim resolution in proceedings before an agency because it is faster and more economical than litigation in federal court." *Johnson v. Ford*, 361 F. App'x 752, 755 (5th Cir. 2008) (internal quotation marks and citations omitted) (discussing purposes of § 1997e(a)).

The Fifth Circuit takes a "strict approach" to the PLRA's exhaustion requirement. *Wilson,* 776 F. 3d at 299–302 (discussing MDOC's ARP process and affirming summary judgment for failure to exhaust). It is well-settled that a prisoner must complete the exhaustion of available administrative remedies prior to filing his

complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("Pre-filing exhaustion is mandatory").

Although a prisoner is required to complete exhaustion prior to filing his lawsuit, exhaustion under the PLRA is an affirmative defense requiring the moving Defendants to demonstrate Plaintiff failed to exhaust available administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). To meet their summary judgment burden, the moving Defendants "must establish" without doubt "all of the essential elements of the defense of exhaustion." *Wilson*, 776 F.3d at 299 (citation omitted).

The PLRA dictates proper exhaustion, meaning that "prisoners must complete the administrative review process in accordance with the applicable procedural rules–rules that are defined not by the PLRA, but by the prison grievance process itself." *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (quoting *Jones*, 549 U.S. at 218); *see also Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam) ("Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them."). A prisoner's grievance must be sufficiently specific to provide officials with "a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Finally, to satisfy the exhaustion requirement, a prisoner must pursue the administrative remedy "to conclusion." *Wilson*, 776 F.3d at 301 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

C.   <u>MDOC's Administrative Remedy Program</u>

Initially, the undersigned notes that MDOC's Administrative Remedy Program ("ARP") is detailed in Chapter VIII of the Inmate Handbook.  *See* [31-1] at 17–18.[1]  The moving Defendants filed a copy of the relevant Inmate Handbook as a supplemental Exhibit [31-1] to their Motion for Partial Summary Judgment.[2]

MDOC implemented the Administrative Remedy Program statewide under the authority of Miss. Code Ann. § 47-5-801, and the two-step version of the program received court approval in *Gates v. Barbour*, No. 4:71-cv-6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010).  The program is available for use by "all inmates committed to the custody of MDOC" in "all" institutions and facilities.  [31-1] at 17.

The ARP is a two-step process through which an inmate may present grievances relating to his incarceration.  *See id.; Jackson*, 763 F. App'x at 377.  To utilize the ARP,

> [a]n inmate must file a grievance within 30 days of the complained of incident. The grievance is reviewed by the prison's legal-claims adjudicator and, if there is an adverse response at the first step, the inmate may appeal to step two. If the inmate disagrees with the step two response, he may sue.

*Wheater v. Shaw*, 719 F. App'x 367, 369–70 (5th Cir. 2018) (internal citations omitted); [31-1] at 17–18.  An MDOC inmate completes the exhaustion of his

---

[1] All citations to the Inmate Handbook refer to CM/ECF pagination.

[2] Since the PLRA "requires that administrative remedies be exhausted before the filing of a § 1983 suit," *see Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir.1998), the rules governing MDOC's Administrative Remedy Program "at the time prior to the filing of [Plaintiff's] suit" apply.  *Wilson*, 776 F.3d at 299.

6

administrative remedies when he proceeds through both steps of the ARP process. *See Wilson*, 776 F.3d at 302 (discussing MDOC's ARP process); [31-1] at 17–18.

D. <u>Arguments of the Parties</u>

In support of their Motion for Partial Summary Judgment, the moving Defendants submit a Declaration of Janice Williams, the Administrative Remedy Program Coordinator and custodian of the ARP records at WCCF. *See* [29-2] at 1. Williams "reviewed the records and information maintained in the ARP files at WCCF and on MDOC's Offendertrak database" for grievances submitted by Plaintiff "pertaining to his incarceration at WCCF," and those records are attached to Williams's declaration. *Id.* at 2–13.

Initially, the records show that Plaintiff submitted a grievance on or about May 20, 2022, complaining about a general population inmate distributing mail to the protective custody inmates on May 18, 2022. *Id.* at 2; 13. This grievance pre-dates the altercation at issue in this lawsuit and has nothing to do with medical care.

On July 29, 2022, the ARP program received a grievance from Plaintiff regarding the July 27, 2022 altercation that is the subject of this lawsuit. *Id.* at 5–9 (identified as WCCF 22-464). Plaintiff does not assert any allegations regarding his medical care in this grievance. *Id.* at 5. Plaintiff completed the exhaustion of his administrative remedies as to this grievance. *Id.* at 9 (copy of Second Step Response and Certificate of Completion). There are no other grievances contained in Plaintiff's ARP records.

The moving Defendants maintain that Plaintiff failed to file any grievances related to any medical care claims prior to filing this civil action. For these reasons, the moving Defendants argue they are entitled to partial summary judgment for Plaintiff's failure to exhaust his administrative remedies. As stated above, Plaintiff has not responded to the Motion [29] for Partial Summary Judgment and the time for doing so has expired.

E.  Discussion

Based on the parties' submissions, there is no genuine dispute as to Plaintiff's failure to complete the exhaustion of his administrative remedies as to any denial of medical care claims prior to filing this Complaint. The records reflect that Plaintiff filed two grievances regarding his incarceration at WCCF and neither grievance mentions his medical care or any allegation that he was denied medical care. The records show that Plaintiff's submitted grievances did not contain any allegations related to medical care, thereby failing to provide prison officials with "a fair opportunity to address the problem that . . . form[s] the basis" of Plaintiff's denial of medical care claims. *Johnson*, 385 F.3d at 517.

The moving Defendants submit competent summary judgment evidence indicating that Plaintiff did not file a grievance with the administrative remedy program regarding any denial of medical care claims. Plaintiff has not responded. "Because [Plaintiff] fail[s] to come forward with specific facts showing there [is] a genuine dispute as to exhaustion," this Court is "required to dismiss his [denial of medical care] claims." *Jackson*, 763 F. App'x at 377 (citing *Gonzalez*, 702 F.3d at

788).

Based on the foregoing, the moving Defendants' Motion for Partial Summary Judgment should be granted, and Plaintiff's denial of medical care claims should be dismissed without prejudice.[3]

## III. RECOMMENDATIONS

For the reasons stated, the undersigned recommends that Defendants MTC, Vannoy, Reece, Bell, and Bolden's Motion [29] for Partial Summary Judgment should be GRANTED and Plaintiff's denial of medical care claims should be dismissed WITHOUT PREJUDICE.

## IV. NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party may serve and file written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party, within fourteen days after being served a copy of this recommendation. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained within this report and recommendation will bar that party from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court, except

---

[3] The summary judgment evidence also shows that Plaintiff has not exhausted his administrative remedies for any denial of medical care claims as to Defendant Schoettmer. A defendant who has not appeared can benefit from the defenses raised by other defendants who have appeared. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (holding non-appearing parties may "benefit from the appearing defendant's favorable summary judgment motion"). Therefore, Defendant Schoettmer may benefit from the moving Defendants' Motion [29] for Partial Summary Judgment and Plaintiff's denial of medical care claims should be dismissed without prejudice as to all Defendants. *See, e.g.*, *Patel v. Haro*, 470 F. App'x 240, 245 (5th Cir. 2012) (affirming district court's decision allowing a non-appearing defendant "to benefit from the favorable disposition of the appearing defendants' summary judgment motion").

9

on the grounds of plain error.  *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Services*, L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

This the 19th day of December, 2023.

           s/ *LaKeysha Greer Isaac*
           UNITED STATES MAGISTRATE JUDGE