IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CHEVELLE MCALISTER, #123411                                              PLAINTIFF

VS.                                    CIVIL ACTION NO. 5:22-CV-0090-DCB-LGI

MANAGEMENT & TRAINING
CORPORATION, ET AL.                                                      DEFENDANTS

ORDER AND MEMORANDUM OPINION

THIS MATTER is before the Court on Magistrate Judge LaKeysha Greer Isaac's Report and Recommendation, [ECF No. 40] (the "Report"), which addresses a Motion for Summary Judgment, [ECF No. 37], that was filed by Defendants Darrel Vannoy, Janaiya Bolden, Bianca Reese, Sa'Myni Bell, and Management & Training Corporation (the "Moving Defendants").[1] Magistrate Judge Isaac recommends that the Motion for Summary Judgment be granted and that this case be dismissed with prejudice. Having

---

[1] Defendant Schoettmer was served with process on 6/26/2023, but he has made no appearance in this case. See the Court's electronic docket for Civil Action No. 5:22-CV-0090-DCB-LGI. The Report notes that a defendant who was served but has not appeared can benefit from the defenses raised by other defendants who have appeared. [ECF No. 40] at 14 n.3. See Lewis v. Lynn, 236 F.3d 766, 768 (5th Cir. 2001) (adopting the holdings of the Fourth, Eleventh and Second Circuits that permit a defaulting defendant to benefit from the defense of no cause of action that has been established by a codefendant."

1

considered the parties' submissions, the record (including the transcript of an Omnibus Hearing conducted by the Magistrate Judge), and applicable law, the Court finds the recommendation to be well-taken.

BACKGROUND

Chevelle McAlister ("Plaintiff"), a pro se post-conviction inmate, brought this action under 42 U.S.C. § 1983. [ECF No. 1]. Plaintiff alleges that the deliberate indifference of defendants caused him to be assaulted and injured by a fellow inmate at the Wilkinson County Correctional Facility. Id. At an Omnibus Hearing conducted by Magistrate Judge Isaac, Plaintiff testified that fellow inmate Daniel Hatten attacked him with a mop stick when the named defendants wrongly allowed close custody inmates to commingle with medium and minimum custody inmates at a prison church service. [ECF No. 28], Hr'g Tr. 9:11-20; see also [ECF No. 1] ¶¶ 14-15. According to the prison warden, "Mr. Hatten's custody level was classified as 'close custody,' meaning he posed a high risk to other inmates, while Mr. McAlister was classified as 'medium custody,' meaning he posed a medium risk to other inmates." [ECF No. 37-1], Vannoy Aff. ¶ 3.[2] Plaintiff claims to have protected himself

---

[2] Pursuant to Mississippi Code Annotated §§ 47-5-99 to 47-5-103 (1972), the classification board of the Mississippi Department of Correction ("MDOC") establishes custody levels for each incarcerated offender. See also Brown v. King, No. 2:12-CV-135-

by stabbing Mr. Hatten with a "shank" or knife that he carried. [ECF No. 1] ¶ 17; [ECF No. 28], Hr'g Tr. 23:9-24:6.

The Moving Defendants filed for summary judgment on the grounds that Plaintiff could not maintain a failure to protect or failure to supervise claim under Section 1983 because Plaintiff failed to produce sufficient evidence of deliberate indifference on the part of defendants. [ECF No. 38] at 3-6. Plaintiff did not respond to the Motion for Summary Judgment.

Magistrate Judge Isaac issued her Report on April 29, 2024. The Report notified the parties that they could file written objections to the magistrate judge's recommendations within fourteen days after being served a copy of the Report. [ECF No. 40] at 15. The Report further notified the parties that an objector's failure to timely file written objections would bar that objector "from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court, except on the grounds of plain error. *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017)." [ECF No. 40] at 15. The Court staff sent a copy of the Report to

---

KS-MTP, 2012 WL 5304084, at *2 (S.D. Miss. Oct. 25, 2012). MDOC Standard Operating Procedure 22-01-01 explains that a "close custody" classification denotes the highest risk general population offender who "requires close supervision where the offender must be under positive security control at all times." [ECF No. 37-2] at 9:405-13.

3

Plaintiff at his address of record, which, at that time, was care of the South Mississippi Correctional Facility in Leakesville, Mississippi.

Approximately one month later, the Clerk of Court received and docketed a handwritten one-page letter from Plaintiff that stated he was "back at W.C.C.F. where I have an ongoing case" and that he had "been on lockdown almost as long as I been here." [ECF No. 41].[3] Plaintiff signed but did not date his letter, and he did not mention the Report. Id. The Clerk's Office made note on the Court's electronic docket that it had updated Plaintiff's address to reflect his new location.

On July 10, 2024, the Clerk of Court received and filed a handwritten submission from Plaintiff titled "Appeal", which was docketed as objections to the Report. [ECF No. 42]. Plaintiff signed but did not date his submission. Id. at 2. The envelope was franked and mailed on 07/08/2024 from postal zip code 39669, the code for Woodville, Mississippi. [ECF No.

---

[3] W.C.C.F. refers to the Wilkinson County Correctional Facility in Woodville, Mississippi, where Plaintiff is currently housed and where the alleged assault occurred on July 25, 2022. When Plaintiff filed his complaint and at the time of the Omnibus Hearing, he was housed at Southern Mississippi Correctional Institute in Leakesville Mississippi. [ECF No. 1] ¶ 4; [ECF No. 28], Hr'g Tr. 26:15-18; [ECF No. 40] at 3. It is not clear on this record exactly when Plaintiff was transferred from Southern Mississippi Correctional Institute back to Wilkinson County Correctional Facility.

4

42-2]. Although Plaintiff does not expressly name the Report in his submission, he asks: "How can you grant this summary Judgement? Its hard to get around plain error." Id.  This suggests to the Court that Plaintiff had received and reviewed a copy of the Report by the time he wrote his "Appeal". The Moving Defendants responded in opposition to Plaintiff's objections. [ECF No. 43].

## STANDARD OF REVIEW

The standard of review that a District Court must apply when reviewing a magistrate judge's report and recommendation differs subject to whether timely written objections have been filed.  If a petitioner has submitted a timely written objection to a magistrate judge's report and recommendation, a court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)[4]; see also

---

[4] Section 636(b)(1) provides in pertinent part:

**(b)(1)** Notwithstanding any provision of law to the contrary—

. . .

Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also

Fed. R. Civ. P. 72(b)(3); Walker v. Savers, 583 F. App'x 474, 474-75 (5th Cir. 2014). Where no timely objection is filed, as well as to those portions of a report and recommendation to which there are no objections, it is appropriate for a district court to apply a clearly erroneous or contrary to law standard of review. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

Summary judgment is appropriate, pursuant to Rule 56 of the Federal Rules of Civil Procedure, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A party cannot defeat a properly-supported summary judgment motion by directing the Court to conclusory allegations or presenting only a scintilla of evidence. Lincoln v. Scott, 887 F.3d 190, 195 (5th Cir. 2018).

---

receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C.A. § 636(b)(1) (West).

On summary judgment, the court must review the evidence in a light most favorable to the nonmoving party. Vann v. City of Southaven, Miss., 884 F.3d 307, 309 (5th Cir. 2018); Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P., 627 F.3d 134, 138 (5th Cir. 2010). Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## DISCUSSION

A.  Timeliness of Objections

The Moving Defendants argue that Plaintiff's objections to the Report were due on May 13, 2024, exactly fourteen days after Magistrate Judge Isaac filed her Report. [ECF No. 43] at 1. Because, according to the Moving Defendants, Plaintiff did not object timely, "Plaintiff's Objection should be denied as untimely." [ECF No. 43] at 2.

The Court finds that the Moving Defendants have overlooked certain procedural rules in their computation of the due date for the filing of objections to the Report. Under Federal Rule of Civil Procedure 6(d), Plaintiff was entitled to an additional three days to file his objections because he was served by mail. Kendricks v. Methodist Children's Home, No. 6:20-CV-1006-ADA, 2021 WL 5002600, at *2 (W.D. Tex. Oct. 28,

7

2021)("Federal Rule of Civil Procedure 6(d) provides that: 'When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), ... 3 days are added after the period would otherwise expire under Rule 6(a).'"

More significantly, the Moving Defendants have not accounted for the "prison mailbox rule". Under the prison mailbox rule, "a pro se prisoner's written objections to a magistrate's report and recommendations must be deemed filed and served at the moment they are forwarded to prison officials for delivery to the district court." Thompson v. Rasberry, 993 F.2d 513, 515 (5th Cir.1993). In Thompson, the Fifth Circuit adopted the reasoning of the United States Supreme Court in Houston v. Lack, 487 U.S. 266, 270-76 (1988), where the Court concluded that "unlike other litigants, prisoners are forced to rely exclusively on prison authorities to mail documents in a timely manner and thus lack the wherewithal to take the same precautions as other litigants for ensuring that a particular document is received by the clerk of court prior to the passage of a court appointed deadline." Thompson v. Rasberry, 993 F.2d 513, 515 (5th Cir. 1993). Unfortunately, on this record, the Court finds no clear evidence of when Plaintiff placed his objections in the prison's mail system or when he handed them to prison officials for delivery to the district court. The

8

Court finds no stamp on the objections or mailing envelope to show a date when they were accepted as "approved legal mail" by an office of legal services at the prison. See Keyes v. Huffman, No. 1:22-CV-228-HSO-LGI, 2023 WL 5616063, at *3 (S.D. Miss. Aug. 30, 2023).  The post office date stamp of 07/08/2024 on the envelope that was eventually received in the Clerk of Court's Office does not prove when Plaintiff handed his undated objections to prison officials for delivery to this Court. Walker v. Savers, 583 F. App'x 474, 475 (5th Cir. 2014) (rejecting defendants' argument that postmark on the envelope containing the prisoner's objections determined timeliness of the objections and vacating district court's dismissal of prisoner's case); see [ECF Nos. 42, 42-2].  Given this lack of record evidence, coupled with Plaintiff's transfers between the Wilkinson County Correctional Facility and the Southern Mississippi Correctional Institute, see supra p. 4 and note 3, and recognizing Plaintiff's pro se status, the Court will take a cautious approach and will review Plaintiff's objections de novo, as if they were timely filed.[5]   E.g., Spotville v. Cain,

---

[5] The Court could instruct the parties to supplement the record with the facts necessary to determine conclusively whether Plaintiff submitted timely objections under the prison mailbox rule.  However, that would be a futile exercise in delay because the Court's legal conclusion will be the same in this case whether reviewed de novo or under a clearly erroneous standard.

149 F.3d 374, 378 & n.2 (5th Cir. 1998) (noting a policy of leniency afforded pro se prisoner litigants because of their lack of ability to control the processing of their petitions but recognizing that this policy has been tempered in certain circumstances). The Court wishes to clarify that, despite the Moving Defendants' arguments to the contrary, [ECF No. 43] at 2, it is affording Plaintiff extraordinary leniency[6] and conducting a de novo review of the record in this case, which is the highest level of district court review possible in this situation. De novo review means that the Court will consider the record that has been developed before Magistrate Judge Isaac and make its own determination on the basis of that record. United States v. Raddatz, 447 U.S. 667, 675 (1980).

B. Review on the Merits

"To state a claim under § 1983, a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the

---

[6] Plaintiff and all pro se litigants must keep in mind the warning of the Fifth Circuit Court of Appeals: Although pro se parties may be held to less stringent standards in certain circumstances, they still must comply with the rules of procedure and make arguments capable of withstanding summary judgment. Ogbodiegwu v. Wackenhut Corr. Corp., 202 F.3d 265, (5th Cir. 1999); Scott v. Pyles, 596 F. Supp. 3d 623, 630 (S.D. Miss. 2022).

United States." Bryant v. Mil. Dep't of Mississippi, 597 F.3d 678, 686 (5th Cir. 2010). The fundamental problem with Plaintiff's Section 1983 claim is that, on these facts and on his theory of the case, Plaintiff cannot prove that the defendants violated his federal constitutional or legal rights. Id. Plaintiff mistakenly believes that when prison officials permitted close custody offenders and medium custody offenders to mix in the same dayroom, the officials violated prison policy and procedures. According to Plaintiff, by violating the prison's policy and procedures, defendants put Plaintiff in danger, displayed deliberate indifference toward him, and violated his constitutional rights. In short, he alleges that the defendants failed to protect him. In Plaintiff's own words at the hearing:

> Well, I filed the case because they had --
> they had inmates that wasn't supposed to be
> around me -- around me. They really wasn't
> supposed to be on the zone with me, period, and I
> was attacked by one of the inmates. I was hit
> with a -- like I said, with a mopstick; you know
> what I'm saying? So I had to defend myself or
> whatever, whatnot, and there wasn't nobody there
> to help or nobody to have any type of assistance.
> So, you know, I felt like that me being attacked
> like that, something need to be done about that.
>     That's why I filed the lawsuit.

[ECF No. 28], Hr'g Tr. 9:11-20.[7]

---

[7] Plaintiff's testimony that no one was there to help him is contradicted by his own testimony later in the hearing where he

11

However, as a legal matter and as noted in the Report, the failure of prison officials to follow their own regulations is not, in and of itself, a constitutional violation that supports a claim for relief under 42 U.S.C. § 1983. Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986) (appellant's claim that his constitutional rights were violated because prison officials failed to follow their regulations was not a constitutional violation); Harris v. Hinds Cnty., 714 F. App'x 451, 452 (5th Cir. 2018) ("Violations of prison rules and regulations do not support a claim for relief under § 1983."); Alex v. Stalder, 67 F. App'x 253 (5th Cir. 2003) (affirming district court's dismissal as frivolous of inmate's suit under 42 U.S.C. § 1983 for prison rule violations).

In any event, based on the summary judgment evidence presented in this case, the Court does not find that a violation of the prison's rules and procedures occurred when the Warden permitted close custody inmates (such as Mr. Hatten) to mix with medium custody inmates (such as Plaintiff) for the purpose of attending a church service. It is the Court's opinion that Plaintiff has misinterpreted MDOC's rules and procedures that address this and similar situations.[8] The

---

admits that three guards were present on the zone when the incident occurred. See discussion and transcript citations at page 14 infra.

[8] Plaintiff submitted as an exhibit to his objections an

record in this case contains a copy of MDOC Standard Operating Procedure 22-01-01 (the "SOP"), the authenticity of which Plaintiff has not challenged. [ECF No. 37-2]. The SOP states in part:

> The following guidelines will be adhered to for all offenders in close custody: . . .
>
> - All services provided in housing unit unless approved by the Superintendent or Warden providing there are appropriate security measures

[ECF No. 37-2] at 9:421-31. With respect to the church service at issue, Warden Vannoy confirmed in his affidavit that, "On July 26, 2022, the inmates of Delta and Echo pods were going to

---

unidentified typed page that contains a summary of prison custody designations. [ECF No. 42-1]. This appears to be a page from the Mississippi Department of Corrections Inmate Handbook, a complete copy of which the Moving Defendants previously submitted to the Court in connection with their Motion for Partial Summary Judgment on Plaintiff's Claim for Denial of Medical Care. See [ECF No. 29] and [ECF No. 31-1]. Plaintiff apparently interprets the Handbook page to mean that MDOC policy prohibits the comingling of close custody and medium custody inmates in all situations. [ECF No. 42-1]. The Court disagrees. The Handbook page briefly describes protocols that are to be followed with close custody inmates such as positive security controls at all times and housing them with other close custody offenders; it does not speak to protocols during closely monitored special events such as the church service at issue in this case. As set forth in MDOC's Standard Operating Procedure 22-01-01 and explained by Warden Vannoy in his affidavit: "… close custody inmates' movement inside the perimeter of the housing unit may be unescorted but will be continuously monitored by correctional staff. There is no MDOC policy or procedure that required Mr. Hatten and Mr. McAlister to be kept separate." [ECF No. 37-1], Vannoy Aff. ¶ 5.

attend church service." [ECF No. 37-1], Vannoy Aff. ¶ 4. Plaintiff understood that Warden Vannoy was responsible for giving the order to let close custody and medium custody inmates attend the church service together. [ECF No. 28], Hr'g Tr. at 12:5-15; 19:24-20:16. Plaintiff testified that Sergeant Reece and two other guards were inside the zone with the inmates when the fight broke out. Id. at 14:23-25. One guard called for help. Id. at 17:13-16. According to Plaintiff, Sergeant Reece vocally told the two inmates to stop fighting, her directive was successful, and the two inmates "stopped on our own." Id. at 24:12-25:8. Plaintiff's testimony indicates that the correctional staff was monitoring and observing Mr. Hatten's movements in accordance with prison policies and that there were appropriate security measures in place to deal with the altercation.

Plaintiff's allegations of deliberate indifference on the part of defendants also fall short. To set forth a failure-to-protect claim under 42 U.S.C. § 1983, the inmate must show that the conditions of his confinement posed a substantial risk of serious harm and that prison officials exhibited "deliberate indifference" to his need for protection. Guerra v. Thaler, 73 F. App'x 79 (5th Cir. 2003); Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998); Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995). To prove deliberate indifference, the United States

14

Supreme Court requires a showing that the official was subjectively aware of the risk. Farmer v. Brennan, 511 U.S. 825, 828-29 (1994). Put another way, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. This is a question of fact. Id.

Plaintiff's hearing testimony sets forth the relevant facts. Plaintiff knew Mr. Hatten previously when they were both incarcerated at the Parchman penitentiary, but they had not had dealings while they were housed at the Wilkinson County Correctional Facility. [ECF No. 28], Hr'g Tr. 16:23-17:9; 20:17-25. Prior to the incident at issue, neither Plaintiff nor Mr. Hatten had reported any problems between them to prison officials and neither had asked the prison staff to keep them separate from one another through the prison "keep separates" or "red tag" program. Id. at 22:25-23:8. Plaintiff testified that he did not necessarily have any reason to anticipate the attack and attributed Mr. Hatten's actions on the date in question to possible drug use. Id. at 20:21-21:16.[9] Warden

---

[9] Some examples of the relevant hearing testimony include:

**By the Court:**
Q. Did you know Mr. Hatten before this particular incident happened?
A. I did. I did.

Vannoy's affidavit further confirms that neither Mr. Hatten nor Plaintiff had requested to be kept separate from each other prior to this incident.  [ECF No. 37-1], Vannoy Aff. ¶ 6.

On these facts, the Court concludes that the attack was unexpected, and the staff had not been made aware of problems between Plaintiff and Mr. Hatton that would have signaled a substantial risk of serious harm.  The correctional staff's actions, as recounted by Plaintiff, do not demonstrate deliberate indifference on the part of the Moving Defendants.

---

Q. Okay. How did you know him?
A. I was at Parchman with him.
Q. And had you all had any types of dealings with each other since you both had been at Wilkinson County?
A. I mean, not that I know of. I felt like that he was on drugs or something that made him react the way he reacted.
Q. When was the last time you had seen or spoken to him before this happened?
A. Maybe three or four years.

[ECF No. 28], Hr'g Tr. 16:23-17:9.

**By Mr. Julian:**
Q. Okay. And you mentioned that you had been in Parchman with Mr. Hatten, but if I understood you correctly, y'all weren't having any current issues when this attack occurred?
A. No, sir.
Q. Did you have any reason to anticipate he was going to attack you?
A. Not necessarily, besides knowing that he was going to come out -- I mean, he said -- when Sergeant Reece came on the zone, she had a few things to say that was drug related. And, I mean, I don't want to put his business out there, but he was up there high.

[ECF No. 28], Hr'g Tr. 20:17-21:2.

As a final matter, in his objections, Plaintiff attempts to revive a claim for denial of medical care that the Court dismissed without prejudice earlier in this litigation. See Order Adopting Report & Recommendation and Granting Defendants' Motion for Partial Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies. [ECF No. 33]. As explained in the Court's prior order, Plaintiff failed to respond to competent summary judgment evidence that the defendants offered in support of their motion. Plaintiff's claim for a denial of medical care already has been adjudicated and dismissed from this lawsuit.

## CONCLUSION

Plaintiff has failed to state a claim under 42 U.S.C. § 1983 upon which relief can be granted.[10] The Court agrees with Magistrate Judge LaKeysha Greer Isaac's recommendation, and the Moving Defendants' Motion for Summary Judgment [ECF No. 37] will be granted.

Accordingly,

---

[10] The Court notes that Magistrate Judge Isaac explained the Prison Litigation Reform Act's "three-strikes rule" to Plaintiff on the record at his hearing and warned him of the consequences of filing a lawsuit that is frivolous or malicious, or that fails to state a claim. Plaintiff acknowledged his understanding and his desire to proceed with this lawsuit. [ECF No. 28], Hr'g Tr. 7:19-8:15.

17

IT IS HEREBY ORDERED that Magistrate Judge LaKeysha Greer Isaac's Report and Recommendation, [ECF No. 40], is **ADOPTED** as the findings and conclusions of this Court; and

IT IS FURTHER ORDERED that the Moving Defendants' Motion for Summary Judgment [ECF No. 37] is granted; and

IT IS FURTHER ORDERED that this case is **DISMISSED** with prejudice in its entirety as to all parties.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED, this 12th day of November 2024.

                                                     /s/   David Bramlette
                                      UNITED STATES DISTRICT JUDGE